IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CYNTHIA L. WILLIAMS,         )
                                        )
                Plaintiff,     )
                                          )
                     v.           )      1:16CV1176
                                          )
NANCY A. BERRYHILL,[1]     )
Acting Commissioner of Social Security,    )
                                          )
                 Defendant.    )

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Cynthia Williams ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for Disability Insurance Benefits and Supplemental Security Income under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.    PROCEDURAL HISTORY

Plaintiff protectively filed applications for Disability Insurance Benefits and Supplemental Security Income Benefits on October 3, 2012, alleging a disability onset date of

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Carolyn W. Colvin as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

November 24, 2010. (Tr. at 23, 272-82.)[2]  Her applications were denied initially (Tr. at 96-125) and upon reconsideration (Tr. at 126-163).  Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 205-06.) Plaintiff, along with her non-attorney representative, attended the subsequent hearing on February 13, 2015. (Tr. at 23.)  The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act from her alleged onset date through May 21, 2015, the date of his decision. (Tr. at 35.)  On July 28, 2016, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review. (Tr. at 5-7.)  However, because Plaintiff's copy of the Appeals Council's denial was returned by the post office, the Council resent the letter on October 13, 2016 and reset Plaintiff's filing period based on the later date. (Tr. at 1.)  Plaintiff then timely filed the present action.

## II.    LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits."  Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006).  However, the scope of review of such a decision is "extremely limited."  Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).  "The courts are not to try the case de novo."  Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).  Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard."  Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

---

[2] Transcript citations refer to the Sealed Administrative Record [Doc. #7].

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

capacity ('RFC')." Id. at 179.[4]  Step four then requires the ALJ to assess whether, based on

that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify

as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior

work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that

a significant number of jobs exist which the claimant could perform, despite the claimant's

impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide

"whether the claimant is able to perform other work considering both [the claimant's RFC]

and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust

to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its

"evidentiary burden of proving that [the claimant] remains able to work other jobs available

in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

## III.   DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful

activity" since her amended alleged onset date. Plaintiff therefore met her burden at step one

of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff

suffered from the following severe impairments:

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

chronic obstructive pulmonary disease (COPD); degenerative disc disease; sciatica; osteoarthritis; major depressive disorder; posttraumatic stress disorder (PTSD).

(Tr. at 26.) The ALJ found at step three that none of these impairments met or equaled a disability listing. (Tr. at 26.) Therefore, the ALJ assessed Plaintiff's RFC and determined that she could perform medium work with further, non-exertional limitations. (Tr. at 28.) Specifically, the ALJ found that Plaintiff

> can only occasionally climb ladders and she must avoid concentrated exposure to fumes. She can perform simple, routine, and repetitive tasks in a stable work environment at an occasional production pace with a predictable routine.

(Tr. at 28.) Based on this determination, the ALJ found under step four of the analysis that Plaintiff could not perform any of her past relevant work. (Tr. at 33.) However, the ALJ found at step five that, given Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert as to these factors, she could perform other jobs available in the national economy. (Tr. at 34.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 34-35.)

Plaintiff, citing the Fourth Circuit's decision in Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015), now raises three challenges to the ALJ's mental RFC assessment. Specifically, she contends that the RFC fails to account for Plaintiff's (1) moderate limitations in concentration, persistence, and pace, (2) mild limitations in social functioning, and (3) mild limitations in activities of daily living. Plaintiff also argues that the ALJ's credibility determination lacks the level of specificity required by Mascio. After a thorough review of the record, the Court finds that none of Plaintiff's contentions merit remand.

A.      Mental RFC Assessment

At step three of the sequential analysis, the ALJ determined that Plaintiff has moderate limitations in concentration, persistence, and pace.  In Mascio, the Fourth Circuit noted that where such limitations are reflected at step three, the ALJ should address those limitations in assessing the RFC or should explain why the limitations do not affect the claimant's ability to work.  The Fourth Circuit specifically held that "an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work."  780 F.3d at 638 (quotation omitted).  This is because "the ability to perform simple tasks differs from the ability to stay on task.  Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." Id.  The Fourth Circuit further noted that

> [p]erhaps the ALJ can explain why Mascio's moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in Mascio's residual functional capacity.  For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect Mascio's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert.  But because the ALJ here gave no explanation, a remand is in order.

Id. (internal citation omitted).

Here, as in Mascio, the ALJ found moderate limitations in concentration, persistence, or pace at step three of the sequential analysis.  (Tr. at 27.)  When later assessing Plaintiff's RFC, the ALJ determined that Plaintiff "can perform simple, routine, and repetitive tasks in a stable work environment at an occasional production pace with a predictable routine."  (Tr. at 28.)  Although Plaintiff now argues that the RFC findings fail to sufficiently account for her concentration difficulties, a thorough review of the ALJ's decision, and particularly the

evidence relied upon in formulating the mental RFC, belie this assertion. As previously noted in other cases in this District, the Fourth Circuit's decision in Mascio

> "does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC. Rather, Mascio underscores the ALJ's duty to adequately review the evidence and explain the decision. . . .
>
> An ALJ may account for a claimant's limitation with concentration, persistence, or pace by restricting the claimant to simple, routine, unskilled work where the record supports this conclusion, either through physician testimony, medical source statements, consultative examinations, or other evidence that is sufficiently evident to the reviewing court."

Tolbert v. Colvin, 1:15CV437, 2016 WL 6956629, at *8 (M.D.N.C. Nov. 28, 2016) (finding that RFC limitations to "simple, routine, repetitive tasks with simple, short instructions, in a job that required making only simple, work-related decisions, involved few workplace changes, and required only frequent contact with supervisors, co-workers, or the public" sufficiently accounted for a Plaintiff's moderate limitations in concentration, persistence, or pace in light of the ALJ's explanation throughout the administrative decision) (quoting Jones v. Colvin, No. 7:14CV00273, 2015 WL 5056784, at *10-12 (W.D. Va. Aug. 20, 2015)).

In this case, as in Tolbert, the ALJ sufficiently explained why Plaintiff's limitations in concentration, persistence, or pace were accounted for by the RFC. First, the ALJ weighed the evidence and made specific findings regarding Plaintiff's abilities, and the ALJ then addressed Plaintiff's limitations and abilities by adopting an RFC that not only limited Plaintiff to simple, routine, repetitive tasks, but also a stable work environment at an occasional production pace with a predictable routine. In addition, the ALJ explained the basis and extent of the limitations throughout the decision. At step three, the ALJ recounted reports from both Plaintiff and her friend, Beulah Smith, indicating that Plaintiff had difficulty

concentrating due to pain.  (Tr. at 27.)  However, he also noted that the psychological consultative examiner, Patrick Quinn, Ph.D., "opined that [Plaintiff] showed an adequate ability to understand, retain and follow instructions, her ability to concentrate long enough to perform simple repetitive tasks was within normal limits, and psychologically, she would encounter mild difficulty relating and tolerating the stress and pressures associated with day-to-day work activity."  (Tr. at 27, 447)  Later in his decision, the ALJ further explained that this opinion was "consistent with . . . Dr. Quinn's examination findings that [Plaintiff] had adequate concentration and comprehension, she performed her activities of daily living unassisted, she was able to drive herself to the examination, and she was polite and cooperative."  (Tr. at 32, 444-47.)  Nevertheless, the ALJ found that Plaintiff had additional limitations in her ability to perform complex tasks and operate at a normal production rate, consistent with the more restrictive RFC opined by State agency psychological consultant Neil Barry, Ph.D.  (Tr. at 32.)

As noted at step three of the ALJ's analysis, Dr. Barry posited that Plaintiff had moderate limitations in concentration, persistence, and pace.  (Tr. at 27, 135, 139.)  However, Dr. Barry explained that, despite these limitations, Plaintiff retained the ability to "carry out a variety of tasks at a moderate production pace with a reasonable number and length of rest periods."  (Tr. at 139.)  He also noted that Plaintiff "will adjust best in a low stress, predicable work routine."  (Tr. at 140.)  The ALJ assigned great weight to Dr. Barry's opinion, specifically noting its consistency with Plaintiff's treatment record, including her "reported isolation and difficulty concentrating."  (Tr. at 32.)   The ALJ then specifically relied on Dr. Barry's findings that Plaintiff "would be able to perform simple tasks with moderate production pace" and

adopted the RFC finding that Plaintiff could perform "simple, routine, and repetitive tasks in a stable work environment at an occasional production pace with a predictable routine." (Tr. at 28, 32, 33.) In short, the ALJ's discussion of, and reliance on, Drs. Barry and Quinn's opinions adequately explains the extent to which Plaintiff's moderate concentration limitation at step three translated into RFC restrictions. Accordingly, the Court finds no error under Mascio.

Plaintiff also contends under Mascio that her mild limitations in social functioning and mild limitations in activities of daily living were not adequately reflected in the RFC. However, these contentions are equally unpersuasive.

> With regard to the mild limitations in activities of daily living and social functioning, some district courts within the Fourth Circuit have extended the holding in Mascio to require an ALJ to either include restrictions in the RFC arising out of those mild limitations or justify the omission of such restrictions. See, e.g., Ashcraft v. Colvin, No. 3:13CV00417RLVDCK, 2015 WL 9304561, at *9 (W.D.N.C. Dec. 21, 2015) (unpublished) ("[S]ince Mascio was decided, the majority of other courts in North Carolina have similarly found that, where an ALJ determines that a claimant suffers from 'mild' or 'moderate' limitations in his or her activities of daily living, social functioning, and ability to maintain [CPP] and such limitations are unaccounted for in the RFC, or their absence is unexplained in the analysis surrounding the ALJ's RFC determination, remand is required." (emphasis added)); Reinhardt v. Colvin, No. 3:14-CV-00488-MOC, 2015 WL 1756480, at *3 (W.D.N.C. Apr. 17, 2015) (unpublished) ("While the court agrees with the Commissioner's argument that the fact that the ALJ found mild limitations in the paragraph B criteria does not necessarily translate to a work-related functional limitation, Mascio clearly imposes on the Commissioner a duty to explain why such mild mental health impairments found at step two do not translate into work-related limitations when [the] plaintiff's RFC for work is considered.").

Adams v. Colvin, No. 1:15CV00673, 2016 WL 4007608, at *7 (M.D.N.C. July 26, 2016). However, "[a]ssuming that Mascio applies even in the context of mild limitations in the broad areas of functioning (i.e., the lowest of four levels above 'none'), the ALJ here sufficiently

explained why Plaintiff's <u>mild</u> limitations in daily activities and social functioning did not translate into further restrictions in the RFC." <u>Id.</u> at *7.

In the present case, with respect to social functioning, the ALJ noted at step three that according to a third party report from Plaintiff's friend, Ms. Smith, Plaintiff avoided others and did not engage in social activities. (Tr. at 27.) However, the ALJ recounted that Plaintiff was engaged and cooperative in her group therapy sessions, related well to her physicians, had no problems getting along with authority, and occasionally went camping with a friend. (Tr. at 27.) In addition, the ALJ noted that Dr. Quinn opined that Plaintiff "appeared reasonably able to relate to co-workers and supervisors." (Tr. at 27, 447) In determining the RFC, the ALJ again relied on Dr. Quinn's opinion that Plaintiff was reasonably able to relate to co-workers and supervisors. (Tr. at 32.) This discussion provides "an accurate and logical bridge" between Plaintiff's mild limitations and the omission of any specific social limitations from the RFC. <u>See</u> <u>Blakes ex rel. Wolfe v. Barnhart</u>, 331 F.3d 565, 569 (7th Cir. 2003) (holding that an ALJ must "build an accurate and logical bridge from the evidence to [his] conclusions so that [the Court] may afford [Plaintiff] meaningful review of the SSA's ultimate findings").

With respect to Plaintiff's activities of daily living, at step three the ALJ adopted Dr. Barry's finding of mild restrictions, noting a report from Plaintiff's friend, Beulah Smith, that Plaintiff "had trouble with some areas of self-care and . . . did not prepare meals often." (Tr. at 26, 329-30.) However, the ALJ also recounted Plaintiff's own reports that she goes to the library, watches movies, reads books, surfs the internet, does some chores, and is generally able to perform her activities of daily living without assistance. (Tr. at 26, 57-58, 330, 470, 499.) The ALJ further noted the consistency of these findings with both the treatment records

and the opinions of Drs. Quinn and Barry. (Tr. at 26-27.) In setting the RFC, the ALJ again considered the treatment records and Dr. Quinn's opinion reflecting that Plaintiff could perform her activities of daily living without assistance. (Tr. at 31, 32). The ALJ also relied on Dr. Barry's opinion, which reflected that Plaintiff had limitations in activities of daily living because of her limitations in her ability to respond appropriately to changes in the work setting (Tr. at 140), but that despite these limitations, Plaintiff could carry out tasks in a low stress, predictable work routine (Tr. at 32, 140.) The ALJ specifically relied on these determinations in setting the RFC. Again, <u>Mascio</u> requires no more.

B.    Credibility

In her final <u>Mascio</u> challenge, Plaintiff contends that the ALJ's use of vague boilerplate language, along with his lack of specificity and explanation, precludes the Court from conducting a meaningful review of which statements the ALJ found credible and why. In <u>Mascio</u>, the Fourth Circuit held that the ALJ erred by determining the plaintiff's residual functional capacity before assessing her credibility. 780 F.3d at 639. In that case, the ALJ applied boilerplate language which stated, in pertinent part, that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." <u>Id.</u> (citation omitted). Here, however, the ALJ found that Plaintiff's statements "are not entirely credible for the reasons explained in this decision." (Tr. at 29.) Unlike the language in <u>Mascio</u>, this boilerplate does not imply "that ability to work is determined first and is then used to determine the claimant's credibility." 780 F.3d at 639 (quotation omitted).

Notably, <u>Mascio</u> further explains that "[t]he ALJ's error would be harmless if he properly analyzed credibility elsewhere." <u>Id.</u> In that case, the ALJ simply failed to perform such an analysis. In contrast, the ALJ in the present case recounted Plaintiff's testimony and stated his reasons for discounting the severity and limiting effects of the alleged symptoms based on the record as a whole. The ALJ stated that he could not find Plaintiff's

> allegations that she has been incapable of all work activity to be credible because of the inconsistencies in the record as a whole. The credibility of [Plaintiff's] allegations of disabling symptoms and limitations was diminished because those allegations were greater than expected in light of the objective evidence of record. Specifically, her treatment records do not support the level of distress, pain, limited functioning or other symptomology to the extent as alleged by Plaintiff.

(Tr. at 29.) In his four-page discussion of the objective medical evidence, the ALJ noted, for example, that despite Plaintiff's complaints of debilitating back pain, the only treatment she appears to have received for this condition during the time at issue for Title II purposes consists of two emergency room visits in September and October of 2012. (Tr. at 29, 408, 410.) Moreover, her treatment records both before and after this period consistently note no pain or tenderness, a full range of motion in her spine, and 5/5 motor strength. (Tr. at 29-30, 376, 515, 520-21, 524-25, 532.) These findings are in line with the consultative findings of Dr. Kola Adekanmbi, who, after examining Plaintiff on April 16, 2013, described her back impairment as mild. (Tr. at 30, 455.) As noted by the ALJ,

> Dr. Adekanmbi noted that [Plaintiff] had normal gait, Romberg's sign was negative and she was able to sit, stand and, move around the examination room without much difficulty. He also noted that she stood on her heels and toes without any difficulty and she was able to squat, and tandem walk upon rising from a squatting position. In addition, she was able to climb on and off the examination table without much difficulty.

(Tr. at 30.)  Similarly, Dr. Robert Pyle, a State agency medical consultant, opined on May 21, 2013 that, despite her physical impairments, Plaintiff remained capable of performing medium work.  (Tr. at 30, 134-38.)

In terms of Plaintiff's mental impairments, the ALJ recounted that Plaintiff took part in three group therapy sessions in April 2013 after being diagnosed with depression and PTSD. (Tr. at 31.)  Plaintiff then took "an almost yearlong break in treatment" before returning to group therapy in April 2014.  Her treatment notes from these sessions relate that she was cooperative and engaged and reported the ability to perform her activities of daily living without assistance.  (Tr. at 32, 463, 464, 470, 499.)  As discussed more fully above, the opinion evidence similarly reflects mild to moderate symptoms and limitations.  Dr. Quinn opined that Plaintiff could "understand, retain, and follow instructions,"  "concentrate long enough to perform simple repetitive tasks," would experience mild difficulties with work stress, and could relate to co-workers and supervisors reasonably well.  (Tr. at 32, 447.)  Dr. Barry opined that Plaintiff "would adjust best in a low stress, predictable work routine," and "could carry out a variety of tasks at a moderate production pace."  (Tr. at 32, 135, 139-40.)

Overall, the ALJ therefore concluded that the objective evidence, as a whole, did not support the level of severity alleged by Plaintiff.  (Tr. at 32.)  In particular, the ALJ correctly noted that the most restrictive medical and psychological opinions rendered in this case found Plaintiff capable of medium work and simple tasks performed at a moderate production pace, belying Plaintiff's assertion that her impairments render her totally disabled.  (Tr. at 30-33.) Nevertheless, giving Plaintiff the benefit of the doubt, the ALJ added further climbing

restrictions to the RFC due to Plaintiff's back complaints and a limitation to no concentrated fumes in light of Plaintiff's COPD. (Tr. at 30.)

In making his credibility determination, the ALJ also noted that Plaintiff (1) "is still able to live independently and care for herself," (2) continues to smoke daily, despite her COPD, (3) was able to go camping with friends, "indicating greater mobility and ability to care for herself than she alleged," and (4) "plays computer games on the internet and reads books, indicating a greater ability to concentrate and perform tasks." (Tr. at 32-33.) Plaintiff now challenges the ALJ's reliance on Plaintiff's continued smoking and daily activities as bases for discounting her credibility. Specifically, she argues that the ALJ mischaracterized and/or mistakenly relied on these activities in discounting her credibility. (Pl.'s Br. at 13-18.)

As explained above, however, the ALJ did not rely on these challenged bases alone in assessing Plaintiff's credibility. Rather, he relied heavily on the objective medical evidence and the medical opinion evidence in finding Plaintiff's impairments to be less functionally-limiting than alleged. Moreover, the ALJ was entitled to also consider the evidence Plaintiff now challenges. As discussed above, the ALJ considered multiple factors, including Plaintiff's group therapy treatment notes and the opinions of Drs. Quinn and Barry, in finding that Plaintiff's concentration was only moderately limited. In coming to this conclusion, the ALJ also relied on Plaintiff's testimony that she spends several hours a day at the library where she reads, plays a game on the Internet, checks out books, and sometimes watches a movie. (Tr. at 26, 33, 57-58.) Although Plaintiff contends that mere speculation ties these activities to her ability to concentrate, the regulations specifically provide that activities of daily living are

relevant when assessing a claimant's credibility. <u>See</u> 20 C.F.R. §§ 404.1529(c)(3)(i) and 416.929(c)(3)(i).

The ALJ was similarly entitled to rely on Plaintiff's abilities to live independently, care for herself, and camp. Notably, Plaintiff testified that she lives in a homeless shelter due to foreclosure, not because she lacks the ability to live independently. (Tr. at 46.) The ALJ also identified treatment notes documenting Plaintiff's abilities to handle her activities of daily living without assistance, keep appointments, and drive. (Tr. at 26, 470, 499.) With respect to Plaintiff's ability to occasionally go camping, Plaintiff challenges the ALJ's failure to mention that her friend takes care of most camping-related activities, including pitching the tent. (Pl.'s Br. at 15-16) (citing Tr. at 56-57). Nevertheless, the ALJ was entitled to infer that the ability to camp, in and of itself, undermines Plaintiff's contention that her back impairment, COPD, and arthritis render her completely physically disabled. (Tr. at 32-33.)

Finally, with regard to Plaintiff's smoking, the ALJ concluded that Plaintiff's failure to quit, despite her physicians' recommendations to do so, undercut the alleged severity and limiting effects of Plaintiff's COPD. (Tr. at 30-32, 55.) Notably, the regulations specify that failure to follow prescribed treatment without good reason precludes a finding of disability. <u>See</u> 20 C.F.R. §§ 404.1530 and 414.930. Moreover, Social Security Ruling 96-7p specifically provides that a claimant's statements may be less credible if she does not follow prescribed treatment. Social Security Ruling 96–7p, Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 1996 WL 374186, at *7 (July 2, 2996) ("SSR 96–7p"). Ultimately, Plaintiff has not shown how the ALJ's credibility analysis was improper or how the ALJ's credibility

determination was unsupported by substantial evidence. To the extent that Plaintiff essentially asks the Court to re-weigh the evidence and come to a different conclusion than the ALJ, it is not the function of this Court to re-weigh the evidence or reconsider the ALJ's determinations if they are supported by substantial evidence. As noted above, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. Thus, the issue before the Court is not whether a different fact-finder could have drawn a different conclusion, or even "whether [the claimant] is disabled," but rather, "whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig, 76 F.3d at 589. Here, the ALJ reviewed the evidence, explained his decision, explained the reasons for his credibility determination, and supported that explanation with substantial evidence. Overall, the Court finds that substantial evidence clearly supports the ALJ's credibility analysis. [5]

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for Judgment Reversing the

---

[5] Effective March 28, 2016, see Social Security Ruling 16–3p, 2016 WL 1237954 (Mar. 24, 2016), the Social Security Administration superseded SSR 96–7p with Social Security Ruling 16–3p, 2016 WL 1119029, at *1 (Mar. 16, 2016). The new ruling "eliminat[es] the use of the term 'credibility' from . . . sub-regulatory policy, as [the] regulations do not use this term." Id. The ruling "clarif[ies] that subjective symptom evaluation is not an examination of the individual's character," id., and "offer[s] additional guidance to [ALJs] on regulatory implementation problems that have been identified since [the publishing of] SSR 96–7p," id. at *1 n.1. The ALJ's decision in this case predates the effective date of SSR 16–3p, and "because SSR 16–3p changes existing Social Security Administration policy regarding subjective symptom evaluation, that Ruling does not apply retroactively, see Bagliere v. Colvin, No. 1:16CV109, 2017 WL 318834, at *4–8 (M.D.N.C. Jan. 23, 2017) (Auld, M.J.), recommendation adopted, slip op. (M.D.N.C. Feb. 23, 2017) (unpublished) (Eagles, J.); see also Hose v. Colvin, No. 1:15CV00662, 2016 WL 1627632, at *5 n.6 (M.D.N.C. Apr. 22, 2016) (unpublished) (Auld, M.J.), recommendation adopted, slip op. (M.D.N.C. May 10, 2016) (Biggs, J.)." Ivey v. Berryhill, No. 1:16CV1304, 2017 WL 4236558 at *6 n.7 (M.D.N.C. Sept. 22, 2017) (Auld, M.J.). Therefore, the Court has considered the credibility issue as raised by Plaintiff in this case.

Commissioner [Doc. #9] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #11] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 5th day of February, 2018.

_____/s/ Joi Elizabeth Peake_____
United States Magistrate Judge